Good morning, Henry Martin of the Nashville Bar, Federal Public Defender in Nashville on behalf of Daniel Quail. We're here on appeal following a re-sentencing that was directed by this court on remand from the first sentencing hearing for the district judge to resolve a couple of issues that it had failed to resolve under Rule 32 that left this court unable to perform its reasonable review because it couldn't determine the basis of the court's decision. Those two issues were one, whether or not the government had waived its objection to the non-victim status of a minor that has some involvement in this case by not making specific objections to the pre-sentence report. The other question was whether or not the sentence that was imposed originally by the sexual misconduct that had harmed a minor, specifically either sexual abuse or some involvement in the creation of child pornography. The court on the re-sentencing hearing essentially dealt with the waivery issue as it had on the first. It didn't address it directly. It went on into an analysis of a variety of factors, including the victim status or lack of status of this minor. I don't have it in front of me. Did you or Mr. Quayle reiterate the waiver objection during the hearing? Was there any point in the hearing, a Bostick point or whatever, I just don't remember where you all said, hey, Your Honor, you still haven't dealt with the waiver issue. Well, we did in our pre-hearing sentencing memorandum that was filed just before the very beginning of that. It sets out the ways that we think the government had failed to preserve that issue. But I mean, I think you had a pretty lengthy Bostick objection. Was that in the first sentencing hearing or the second? We had fairly lengthy Bostick hearings in both. They're very active. The objection. Yes, sir. I mean, this would seem to be a classic one that should be raised in response to a Bostick question. Any further objection? Well, Your Honor, you still haven't ruled on the waiver. I don't believe I did. Should we be reviewing this on plain error? The government does not assert that. They do assert plain error review on the imposition of a 12-month period of confinement during supervised release. We concede we did not raise that in the Bostick conversation as well. They and we both have asserted that it's a de novo review on the abuse of discretion standard as to other issues. And I'm really not. I think the failure to address clearly the waiver issue had some impact. I have to speculate as to what the nature of that impact was since it was not clearly addressed. My main focus is that the judge, while he did resolve the question of whether or not he believed or thought there was proof to support a finding of sexual abuse of this minor, and he resolved that in the negative, sometimes saying there's no proof, sometimes saying I find there was no abuse. He said there was some tie. He said there on a couple of occasions he said there's some sexual tie, including in a way that I found real troubling in trying to understand what the judge decided, and I'll get to that in just a second. But he created a number of other issues and questions that he posed that he never resolved that I think leave the sentence that he did impose totally reliant on speculation as to what his basis was, with some exception to that. What he did, though, was he did reduce the sentence. We got a benefit from the re-hearing, but he reduced the sentence apparently because of his concern about the disparity between his child pornography sentences and those of other members of the court in the Middle District and nationally. He also expressed some concern about the changing concept of guidelines by the Sentencing Commission. But what he wound up doing was to establish what he called a mean, I believe, relying on some information we had submitted to him at the second hearing regarding median sentences imposed on child pornography cases, both in the Middle District and nationally, and he determined what his mean was and then added a specific 24-month enhancement to that mean based on what he described as psychological harm to this child. And the problem is, A, it's hard to know exactly how he came up with this mean. I mean, I could probably get pretty close speculating. He's off two months one way or another, right?  And frankly, I wouldn't be here on two months. You know, mean, median, you want to choose, or whatever. So we think that's what he did, is that he picked the number that was the, I think it was the median for the Middle District of Tennessee, called it a mean, and then when he added 24 to it, he came up to 160, which is two months off. The real problem is that he never articulated, nor did the government, what the conduct of Mr. Quayle was that caused the psychological harm. Other than referring to anger, he never really identified the nature and severity of the psychological harm. He never, in addition to not specifying what it was that Mr. Quayle did that caused this harm, he did not remove from consideration a number of other possible sources for this same anger that he refers to, including a number of which that had nothing to do with his upbringing, with the child's family situation, that had existed prior to Mr. Quayle's coming into the scene. And he also said on a number of occasions, raised the question himself, I can't be sure that this, whatever was caused this harm, is something that I can consider under sentencing. I can't, I'm... Can you kind of trace for me the history of how, just briefly, of how this child got involved in this case? I mean, there was apparently some confusion about photographs, there was a file folder involving this child. Can you just kind of, I'm not asking for something elaborate, and I don't want you to have to take too much time from your argument, but just tell me how we got from there to here. Briefly, the relationship was established when Mr. Quayle worked at the YMCA. Oh, I got that. I understand the substance of the relationship. I'm just, it's this case and how it evolved that this was relevant to this case. When Mr. Quayle was arrested, based on some leads coming out of peer-to-peer traffic, and his computer was seized and searched. On his computer, there was a file that said, my son, and it gave the minor's name. In that file folder were a number of images. Some were clearly, excuse me, child pornography. The ones that were purely child pornography were generally, in fact, were all unidentifiable, because they generally either didn't show a head or they showed some view that you couldn't, that were not identifiable characteristics. There were, I can't remember the number now. The proximity to this file folder with non-pornographic material regarding this child is what provided the connection. Yes, ma'am, because there were also some, there were non-pornographic and pornographic images. The non-pornographic were of this child. The pornographic ones were not. And so, and then the name on the folder was the name of the minor child. So when the files were seized, an investigation was made to determine whether or not the pornographic images were, in fact, of this child. And that investigation was done both by local police... The child is not mentioned in the pre-Senate report. No, ma'am. Well, maybe somewhere in the narrative. It may be just in the history of the... I don't think I looked at it. I don't think he is. He's certainly not in the guidelines. So how did he get, how did the inquiry into the child and the relationship with the child, how did that start in terms of sentencing? Just before the guilty plea, there had been a charge related to the child that was dismissed. He then pled to, that was dismissed, he pled to other charges. We get to the sentencing hearing. In advance of the sentencing hearing, I was given a copy... Because they thought the pornographic images in the file were of that child? That was the basis for the charge that was later dismissed. But then they dismissed it. Okay, got it. We get to the sentencing hearing. I raised an objection that the government was going to try to put on proof to establish that the child was, in fact, a victim, although they had not made that objection in their pre-sentence report objections. And the government said that we have never abandoned our belief that the child was a victim. And at various times gave explanations on why it was not included in their objections to the pre-sentence report. And then either their first or second witness, I can't remember which, on the re-sentencing... hearing. On the first, no. And that led to evidence being presented concerning the relationship with this child? That was actually the first sentencing. They put on a psychologist who had had sessions with the child who opined for the very first time on the stand that his conclusion was that there had been sexual abuse perpetrated by Mr. Quill. Just the same psychologist who has the report that says that the child never... he couldn't conclude that the child had had a sexual relationship with the defendant? Yes, ma'am. Well, that's what the report says. Yeah, I know. But then he testified... The same one gave a different opinion. Yes, ma'am. And then there was more evidence at the second, at the re-sentencing? The only evidence at the second hearing was that the family had moved. I think I put Mr. Quill back on at the second re-hearing and he testified about post-sentencing. Okay. I'm sorry. I didn't mean to take you away, but that's just been murky to me. Yes, ma'am. Okay. But the problem is we've got to... You were expected to make a reasonable determination on a sentence where I don't think there's any way for you to know what the district court based its decision on. I mean, clearly the judge thought there was psychological harm. But that's as far as he gets. He gives a number of different reasons of what might cause the harm, including they didn't like each other might be the reason the child was angry. The fact that the child had thought of him as a father figure at one point in time and then abandoned that might have been why he was angry. He talked about all of the misinformation that was given to and relied upon the psychologist that may have permeated the discussions with the child that may have led to the anger. And he never says that none of those apply. He never says what the basis is for the psychological harm. The really, I think, troubling thing is when the hearing is all over and I'm, again, at the podium to make my Bostic objections, and I say there's no proof of conduct on the part of Mr. Quill that caused the psychological harm, and the judge said, well, what about that nude picture of the child? And there was no nude picture, and that was my response. And this was after the judge had crafted and announced his opinion. And he didn't change it. He didn't go back to reconsider. And frankly, if there had been a nude photograph of this child in my client's possession, that would have been substantial proof that was contrary to the findings that the court had made about no sexual abuse, no involvement in sexual and child pornography. And yet it was something still that was cooking in the judge's mind at the time he made his decision. It's not articulated until that point in the process. And who knows whether or not that still, whether or not that was what caused it. If we were to remand, as you're asking, what specific directives or guidance would you be asking us to provide to the district court so we don't have a third round of this? I guess I would like for the court to direct him not to enhance the sentence based on psychological harm without a finding that there was conduct on the part of Mr. Quayle that is wrongful conduct, misconduct on his part, that is somehow related either to the offense or to his character,  some articulation of what conduct it is that caused this psychological harm and what the nature and severity of the psychological harm are so that it's possible to measure whether or not 24 months is a reasonable response to that. There's no way to know now. There may be some articulation of a theory with which I'd have to argue that it's just his opinion versus my opinion and I'd lose that argument. But I don't know what that opinion is. And this court can't know what I think what that opinion is. So if I haven't used my three minutes, I'll preserve whatever's left. May it please the court, the United States' position is that the district court did comply as required with Rule 32.1.3.B by finding that the United States has not waived its right to claim that the minor was a victim. But the court did not so find. The United States' position is that it impliedly did so because almost the entire resentencing was dedicated to this specific issue. Isn't that also consistent with the district court just overlooking again the objection or the argument? Our position is that it is not because he was struggling on multiple occasions, as we mentioned in our brief, at least 10 occasions he was trying to articulate whether this minor victim was in fact a victim for purposes of psychological harm. His entertainment of that to such extent was showing that he was allowing that. And in our 28J letter, United States v. Templeton, whether we waived it or not, the court could even raise it sua sponte on its own. So the United States' position is that it wasn't waived. The court, by ruling on it, entertaining it, and raising it for such an extensive amount of time, was showing that it was not finding that the United States had waived its right. I want to address your attention to the most troubling thing about this case to me. And that's what Mr. Martin was just alluding to about the after this sort of all-over-the-place discussion of psychological harm. And during the part of the sentencing at the end, where Mr. Martin is noting his various Bostick objections, the court wanders back into he did have a nude photograph of this victim. Whether the victim saw it or not is unclear. And that gives me question, makes me question, whether even though the district court had been talking about psychological harm, whether he didn't believe that that psychological, whether he didn't base that finding on just an erroneous fact. What do you have to say about that? I'd first start with the district court in making its findings and its reasons for those findings. Nowhere mentions the fact of pornographic or nude photographs of this minor child. Well, this is at the very end. I understand, I understand. But the point is he, I mean, it's kind of worse. This is part of the sentencing hearing that Judge Gibbons is referring to. It's kind of worse because it's after he's already decided the sentence. He's still got in his mind that there's a nude photograph of the child. In the first sentencing, there was some discussion about the photographs that were contained within this folder that the minor was in various states of undress. He was shirtless in a couple of them. I guess I'm not asking whether there was a basis based on the discussion at some point in the case for the district court to have been confused about that. The problem for me is that he's still confused after he's imposed sentence at a time when it's all done. And you don't say, I don't believe, Your Honor, there's not any nude photograph of the victim. Mr. Martin says that. And then I didn't see a place where you said, Your Honor, you indicated there was a nude photograph. Was that a factor in influencing your sentence? I agree with Your Honor. And Mr. Martin was the one who responded. He was the one making the objections and having the exchange with the court at the time. And it was corrected by Mr. Martin. The court kept clear the psychological harm to the minor victim as a result of the defendant based on the psychologist. That's in the record. When the United States was trying to tell the court, but we have these other factors to look at. We have this folder. The court specifically says that goes to the defendant's state of mind. That goes to the defendant. So when looking at the psychological, the possession of the pornographic images and non-pornographic images in the My Son Devin folder. And in the record 161, the re-sentencing pages 1290 to 1291, the court specifically states to me when I'm making this argument that that goes to the defendant's state of mind. So my position is that the court kept those separate. And when he was looking at psychological harm to the victim, he was looking at the statements made to the psychologist, the things that the minor child suffered through his relationship with this defendant. That would be the United States response to that is that it's sufficiently clear in the record that the court was keeping those two things separate. So whether he thought there was a nude photograph or not, he was not attributing that to the psychological harm the defendant caused to the minor victim. What's the harm in... I mean, we're spending an awful lot of time, forensically trying to figure out what the district court was actually thinking. It's a substantial sentence. What's the harm? Why shouldn't we say, do it again and be more clear? Because things change as they did in the first re-sentencing that we had. It then became the defendant has had issues in custody. The defendant doesn't have what he needs and is exposed to. The defendant has suffered all of these types of things and his sentence should be reduced. We now need to look at these other factors because it becomes... I mean, okay, it could be a limited remand, I suppose. I mean, that's just, that's saying, well, you know, Mr. Martin's going to fight to the end for every advantage he can obtain. That's the disadvantage for sending it back from our perspective, Your Honor. Okay, but I mean, that's not a disadvantage. I mean... And the problem for the judge is the judge has to sentence on that day. I mean, it could be the guy's a heart condition now. I mean, you can't, you can't, you know, stuff the genie back in the bottle. Whatever the defendant presents on that day, that's the defendant you're sentencing that day. I understand. Yes, Your Honor, and that's a disadvantage as far as we're concerned. Even on a limited remand, the United States believes that it is a sufficiently clear record. And we've cited case law that says there doesn't have to be a specific finding that waiver was made or not waived. And through all of this, the court has went to great pains to make sure that this didn't come back on appeal the second time and have issues with it. It read the opinion, we addressed the opinion, and he tried to cover all of his bases as directed by this court. What about just the degree of specificity that should be required of district judges with respect to explaining the sentence? I mean, or the degree of clarity is probably a better way to describe it. Well... I mean, quite apart from the waiver. Yes, Your Honor, the degree of specificity and the specific issue, that's, we have Bostick for that. And some of these issues, as addressed by Judge Kethledge, wasn't raised by the defense during Bostick in the second hearing. I'm not sure that it's too reasonable to expect the defense attorney... I mean, there were, you know, the Bostick objections were pretty specifically made, but I mean, I don't think you can expect the defense attorney to say, well, Your Honor, this sentence wandered all over the place, and I don't think the Court of Appeals is going to be able to tell exactly what you did, and that's my objection. Could you start over and organize your thoughts? I mean... I agree. I believe both sides did the best we could to make sure that the record was clear, and at the end, we were trying to make that. In fact, the United States asked for purposes of the halfway house sentence that the law requires that the judge specifically state why he's doing what he's doing, and he did. So the United States' position is that it is a messy record, but the United States and the court both tried to make sure that it was a clear record, and the court sufficiently did so in finding that this court should affirm it. What about Mr. Martin's point that we really can't tell from the record, notwithstanding counsel's efforts, what conduct in particular, what specific conduct, causes this psychological harm? The United States' response to that is that the psychological harm that the judge was finding was... and as I mentioned, I believe that it's clear in the record. It takes, you know, going through the entire record to find this, but it's clear throughout that the judge took the psychologist's testimony into consideration and the findings that he made based on the statements that the victim was saying about the defendant. So what conduct? You tell me, from this record, what conduct was the judge referring to specifically? The relationship. The relationship he had. Why doesn't this make sense? The relationship, as I understand it, was not an appropriate one. It exceeded the limits that someone in Mr. Quayle's position with the Y should have on his behavior with any child. But whether that's when there's not... I mean, he got too close to the child if not sexually otherwise. And it was unwelcome after some point. Why isn't it... doesn't it make sense to say that there's no indication that the relationship was sexual in nature or not sufficient evidence on which to base that finding? Then any psychological harm to the victim which is unrelated to the instant offense just has to be disregarded for purposes of... or instant offenses just has to be disregarded for sentencing purposes. I mean, probably... The nature of human relationships is that sometimes people cause psychological harm to us and we probably cause psychological harm to other people. We hope it's not of a serious nature. But if it isn't shown to be related to the offenses, why should it be a basis for sentencing at all? It is our position that it is related to the instant offense. The psychologist's testimony about the anger and hostility and I didn't mention this early but also the victim saying, I don't know, I don't remember, I don't want to talk about that and specifically trying to address with the victim his relationship. The specific instances of whether there was sexual misconduct or not. There was some discussion about the timing of that. I believe it was on cross-examination by Mr. Martin that the timing. So in January of 2010 is when the mother took this minor victim to go see the psychologist and it wasn't until October of that year that these pictures came into play about this minor victim. So for that 10 month period of time that's in the record at the first sentencing record 129 page 88 it wasn't until that entire period of time had lapsed that the psychologist was trying to get this information about this defendant. Do you think that it is apparent from the between these offenses and the psychological harm to which he is referring? I think the district court was trying to resolve that but didn't believe it had sufficient evidence to make a sexual connection of abuse there. But that it was making a connection that there was sufficient evidence making the connection of psychological harm based on the relationship. Because of the statements made by the victim to the psychologist. The United States believes as it's briefed extensively that this resentencing covered impliedly the waiver that the defense raises that that was sufficiently addressed by the court that the 24 month enhancement was not based on erroneous facts as well as the 12 months in the halfway house and we are asking that the court affirm the district court's decision on its resentencing unless your honors have any further questions. Thank you. I have some minor points to make but if the court's got a pretty good grasp of what's going on I don't need to take up a lot of your time. Make your minor points. I think we do have a grasp of what's going on but that doesn't mean we're not anxious to hear your minor points. I agree with everything you were saying Judge Gibbons right towards the end except that I don't think it's clear that the relationship was inappropriate in ways even outside of sexual conduct. There was substantial proof at the original sentencing hearing that the relationship was encouraged by the mother, authorized by the mother, known by the YMCA. In retrospect it was a mistaken relationship but it's not clear that it was inappropriate in ways that would have led to harm. As to the reliance on the I didn't mean to suggest it necessarily I just don't think anybody who's working for the Y needs to get that enmeshed in the life of a child. Call me dad. Two other real brief points One is the reliance on the psychologist. Judge, the district court never referred to the psychologist's proof without saying how troubled he was by all the misinformation that the psychologist received and imparted. It's not clear that the judge relied on that for anything other than the report that the kid had appeared to be angry. And lastly, part of the problem the district judge had is even today the government has never articulated a clear theory about what the harmful conduct was engaged in by Mr. Quayle when it occurred and how and to what degree it impacted on the child. So the judge was struggling on his own because he was given no guidance by the government even in their brief and in their argument today they still can't pinpoint conduct on Mr. Quayle's behalf when it occurred in the brief and at the sentencing hearing they say it occurred after the charges were brought not back during Florida when Mr. Quayle lived in Florida. So there are reasons that there's confusion in the record and I do hope that on remand with a limited remand I think is appropriate that we can finally get to what the basis for the sentence is and if a further review for reasonableness is called for at that point this court would have something to work with. That's all I've got. We appreciate the arguments both of you have given and we'll consider the case carefully.